# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W. MEEDER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-1318 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| COVIDIEN SALES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

### I. MEMORANDUM

Defendant's Motion for Summary Judgment (Doc. 40) will be granted, and Plaintiff's

Motion (Doc. 36) denied.[1]

Until now, this case has been presented as involving distinct, competing claims,

with Plaintiff, a former-employee, alleging that he was underpaid for fiscal-year 2019 ("FY19")

in the amount of $82,314; and Defendant, his former employer, alleging overpayment in the

amount of $77,886.91. Specifically, Plaintiff alleged that Defendant did not credit him for sales

that, if counted, would have resulted in him meeting benchmarks qualifying him for additional

sales-overage commissions. *See* Compl. (Doc. 1) at ¶¶ 13, 16. Defendant, on the other hand,

contends that − due to certain sales having been "double-traced" − Plaintiff and over 20 like-

employees received double-credit, resulting in an unwarranted inflation of their commission

payments. *See generally* Def.'s Br. (Doc. 42) at 2.

---

[1] The Court writes only for the parties and their counsel, who are intimately familiar with the facts and law.

As for Plaintiff's claim of underpayment, discovery has not borne out his original position. Defendant has put forth unrefuted evidence that Plaintiff did not receive the additional commissions he seeks/sought, because he did not hit his sales quota for the ESD/Energy category of products (as opposed to the Hernia Mechanical category, as indicated in the Complaint). *See* Pl.'s Resp. (Doc. 48) to Def.'s SOF at ¶ 22 (admitting same).[2]

In recognition of the foregoing, Plaintiff has changed tack, now arguing that his "claim for payment, and [Defendant's] claim of overpayment, are two sides of the same coin." *See* Pl.'s Br. (Doc. 38) at 17. Plaintiff asserts that Defendant's reversal of the double-tracing may well have resulted in him being underpaid commissions. *See, e.g.*, Pl.'s Opp'n Br. (Doc. 47) at 2, 20 (alleging that, if Defendant's reversal process was erroneous, it would owe Plaintiff an additional $80,536.37).

In any event, the case now focuses on a narrower set of overarching questions: has Defendant demonstrated that Plaintiff's commissions were improperly inflated through double-tracing; and, has Defendant applied sound and reasoned methodologies to reverse the effects of double-tracing to determine Plaintiff's (and like employees') correct commission amounts for FY19?

Having reviewed all of the evidence and arguments, the Court finds both questions answered in the affirmative. Defendant's evidence shows that it engaged in sound and reasoned methodologies to determine the amount of commission-overpayments its employees enjoyed as a

---

[2] Plaintiff volunteers that, had Defendant credited him for *unfilled* orders, he would have met the quota for the ESD/Energy category in FY19. *Id.*; *see* Joint Stip. of Facts (Doc. 35) at ¶¶ 2-3 (indicating the parties' agreement and understanding that Plaintiff was not credited for such sales, in essence, because they were unfilled/not completed). Such an approach, however, was inconsistent with the parties' Sales Incentive Plan; and any later-filled orders would have been applied to the following fiscal year (had Plaintiff not resigned).

result of the "double-tracing" problem. Plaintiff's grievance, that the double-traced orders could

not be tied by a "common identifier" (*e.g.*, shared invoice or purchase order numbers), is beside

the point. That certain common identifiers do not exist means only that – they do not exist.

Defendant has been able to identify common threads, by which to compare the two data sets,

and it has established that a double-tracing occurred every time the paradigm-in-question

presented (*i.e.*, when O&M shipped a PANDAC order to UPMC's Consolidated Services Center,

both O&M and UPMC reported tracings for the same transaction). Defendant reversed the

duplicate O&M tracings, thereby establishing the correct dollar figures in sales actually made.

That information, in turn, was used to calculate the overpayments made to the affected

employees. Plaintiff's so-called "factual" challenges are unavailing, as the undisputed facts of

this case do not favor his position.[3]

Plaintiff's legal challenges get him no further. The Court is not persuaded that

Defendant's tort-based claims are barred by the gist of the action doctrine, or otherwise

prohibited under the law. In these regards, the Court relies on the legal authority supplied in

Defendant's briefing. Even assuming Plaintiff is correct that Defendant is restricted to contract,

Defendant easily could amend its Counterclaims to so-assert. Plaintiff cannot establish

prejudice. There is no reason to believe that discovery would have gone differently, or that the

nature of the litigation, to this point, would have been significantly altered. At bottom, the Court

---

[3] Although not directly relevant on summary judgment, it is notable that over 20 similarly-situated employees agreed to make reimbursement. Plaintiff was the lone "holdout," and he resigned his employment contemporaneously. Also notable is Defendant's persistent and vociferous defense/prosecution of this case, notwithstanding the relatively limited amount in controversy, and despite its by-now significant litigation expenses. All signs are that Defendant is steadfast and righteous in its belief that it acted properly; and that, for Defendant, the case is not "about the money." While the Court cannot, and has not, relied on these things in granting summary judgment, it would be naïve to say that they have no bearing on an objective evaluation of the case.

is not convinced that the law, whether by substance or technicality, precludes Defendant from recouping the overpayment.

Finally, Defendant has effectively refuted Plaintiff's contention that it took too long to uncover the double-tracing issue, or that Defendant did not address the issue, once identified, with sufficient haste. Plaintiff's reference to an unrelated tracing issue, identified and resolved months prior, is – as Defendant identifies it – a red herring.

In the end, this case is a simple one. Plaintiff was overpaid, and he has to give back the money. Much else of what has been said is excuse and distraction. Plaintiff has not identified genuine issues of material fact, and Defendant is entitled to summary judgment.

The only loose end, in the Court's mind, is whether the judgment against Plaintiff should include prejudgment interest. Def.'s Countercls. (Doc. 9), at Wherefore clause; *see* Def.'s Br. (Doc. 42) at 11 n.2 (seeking interest consistent with District Judge Ambrose's award in Metropolitan Life Ins. Co. v. Brown, 1998 WL 1084680, *4 (W.D. Pa. Dec. 1, 1998)). Plaintiff does not appear to address this issue; and any objection, therefore, might be deemed to be waived. *See* Brown (holding same). Out of an abundance of fairness, however, a deadline will be set for Plaintiff to file supplemental briefing on the issue. By the same deadline, Defendant may, should it choose, submit a proposed order reducing the interest award to part of the money-judgment. As appropriate, Defendant's submission should include any additional legal authority in support of its request, and a formula for calculating the exact amount owed, based on the date of the entry of judgment.

Within the same time frame, the parties are encouraged to consider, and are directed to meet and confer to discuss, whether compromise can now be reached regarding the sum Plaintiff will pay Defendant. It seems unlikely that the subject matter of this lawsuit (recouping

commission overpayments from former employees) plays a prominent role in Defendant's

business model.  On the other hand, engaging in additional, protracted legal wrangling does not

appear to serve Plaintiff's interests, particularly in terms of "not throwing good money after

bad."  Finally, their clients' disagreements having been fully aired and resolved, it would appear

that counsels' considerable talents would be better spent elsewhere, from the perspectives of the

lawyers and clients, alike.

      Consistent with the foregoing, the Court hereby enters the following:


## II.  **ORDER**

      Defendant's Motion for Summary Judgment (**Doc. 40**) is **GRANTED**; Plaintiff's Motion

(**Doc. 36**) is **DENIED**; and the deadline for submissions regarding prejudgment interest is

**July 19, 2021**.  Should the parties reach agreement regarding an alternative final resolution,

counsel promptly shall so-advise Chambers (412.208.7460).

      IT IS SO ORDERED.



June 28, 2021                                                s/Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States District Judge

cc (via ECF email notification):

All Counsel of Record